**No. 24-1759**

IN THE

# United States Court of Appeals for the First Circuit

———————

TRIUMPH FOODS, LLC, CHRISTENSEN FARMS MIDWEST, LLC, THE HANOR COMPANY OF WISCONSIN, LLC, NEW FASHION PORK, LLP, EICHELBERGER FARMS, INC. AND ALLIED PRODUCERS' COOPERATIVE, INDIVIDUALLY AND ON BEHALF OF ITS MEMBERS,

*Plaintiffs-Appellants*,

v.

ANDREA JOY CAMPBELL, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF MASSACHUSETTS, AND ASHELY RANDLE, IN HER OFFICIAL CAPACITY AS MASSACHUSETTS COMMISSIONER OF AGRICULTURE,

*Defendant-Appellant*,

———————

On Appeal from the United States District Court
for the District of Massachusetts
Case No. 1:23-cv-11671-WGY, The Honorable William G. Young

———————

**APPELLANTS' MOTION TO EXPEDITE**

———————

RYANN A. GLENN
HUSCH BLACKWELL LLP
14606 Branch Street, Suite 200
Omaha, NE 68154
(402) 964-5000
ryann.glenn@huschblackwell.com

MICHAEL T. RAUPP
CYNTHIA L. CORDES
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
michael.raupp@huschblackwell.com
cynthia.cordes@huschblackwell.com

*Counsel to Appellants*

## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 2(a), Federal Rule of Appellate Procedure 27, First Circuit Local Rule 27, and First Circuit Internal Operating Procedure VII.B., Appellants respectfully move this Court to expedite this appeal. This appeal arises from Orders and subsequent Judgment by the district court (Young, J.), which rejected preliminary and permanent injunctive relief premised upon several constitutional challenges to Massachusetts' Question 3 Minimum Size Requirements for Farm Animal Containment.[1] *See* ECF Nos. 171–72.[2] Appellants request only a modest acceleration of the typical appellate briefing schedule in order to have the case fully briefed in time for this Court's standard November argument calendar. Specifically, Appellants propose the following schedule:

- **Appellants' opening brief: September 20, 2024 (28 days from today)**

---

[1] While Plaintiffs filed their notice of appeal in the District Court on August 13, 2024, this appeal was not docketed in this Court until August 19, 2024. Plaintiffs immediately filed this Motion to Expedite Consideration of the Appeal thereafter.

[2] All ECF citations reference the district court's docket below, Case Number 1:23-cv-11671-WGY (D. Mass.).

- **Appellees' response brief: October 18, 2024 (28 days following Appellants' opening brief)**

- **Appellants' reply brief: October 28, 2024 (10 days following Appellees' response brief).**

Further, Appellants respectfully request that the Court docket this appeal for argument during that November calendar, or as soon thereafter as practicable for the Court. In further support of this motion, Appellants state as follows.

## BACKGROUND AND PROCEDURAL HISTORY

On November 8, 2016, Massachusetts voters approved Massachusetts' Question 3 Minimum Size Requirements for Farm Animal Containment ("Question 3" or the "Act"). The Act established minimum size requirements for breeding pigs to supposedly "prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of Massachusetts consumers, increase the risk of foodborne illness, and have negative fiscal impacts on the Commonwealth of Massachusetts." Mass. Gen. Laws Ann. Ch. 129 App., § 1-1, *et seq*.

Under the Act, it is also unlawful for a "business owner or operator to knowingly ***engage in the sale*** within the Commonwealth of

Massachusetts of any . . . Whole Pork Meat that the business owner or operator ***knows or should know*** is the meat of a covered animal that was confined in a cruel manner, or is the meat of the immediate offspring of a covered animal that was confined in a cruel manner." *Id.* at § 1-3 (emphasis added). Specifically, "[c]onfined in a cruel manner" means confining a "breeding pig in a manner that prevents the animal from lying down, standing up, fully extending the animal's limbs or turning around freely" (the "Minimum Size Requirements"). *Id.* at § 1-5. The Act also contained an exception, stating that its sales ban did not apply to sales "undertaken at an establishment at which inspection is provided under the Federal Meat Inspection Act[.]" *Id.* at § 1-5.

Regulations to implement and address enforcement of the Act were ultimately promulgated by the Department of Agricultural Resources and went into effect on June 10, 2022, which was well beyond the original date mandated within the Act. 2022 MA REG TEXT 610066 (NS) (the "Regulations"). The Regulations are included at 330 CMR 35.01-08. The effective date of the Act as applied to breeding pigs was amended to be August 15, 2022. Acts (2021) Chapter 108 § 6. In *Massachusetts Restaurant Association et al. v. Healey* (Case No. 4:22-cv-11245-MLW)

the district court ordered a stay of the enforcement of the Act and the Regulations until 30 days from the issuance of the United States Supreme Court's final decision in *National Pork Producers Council v. Ross*, 143 S. Ct. 1142 (2023). (ECF No. 17). The opinion in that case issued on May 11, 2023, and the mandate issued on June 12, 2023. The stay of enforcement period was extended until at least August 23, 2023.

On July 25, 2023, Triumph and Farmer Plaintiffs[3] sued Defendants Andrea Joy Campbell, in her official capacity as Attorney General of Massachusetts ("Campbell"), and Ashley Randle, in her official capacity as Massachusetts Commissioner of Agriculture ("Randle") (collectively, "Defendants"), seeking to enjoin enforcement of the Act. ECF No. 17. Triumph is a farmer-owned, pork processor producing high-quality pork products sold locally, nationally, and internationally. ECF No. 17 ¶ 12. It also sells pork within Massachusetts. Farmer Plaintiffs are family-owned farmers who breed pigs to supply Triumph's pork processing operations.

---

[3] Plaintiffs-Appellants consist of the following: Triumph Foods, LLC ("Triumph"), together with Christensen Farms Midwest, LLC ("Christensen Farms"), The Hanor Company of Wisconsin, LLC ("Hanor"), New Fashion Pork, LLP ("NFP"), Eichelberger Farms, Inc. ("Eichelberger"), and Allied Producers' Cooperative ("APC"), both in its official capacity and on behalf of their members ("Farmer Plaintiffs").

5

ECF No. 17 ¶¶ 13–19. The lawsuit contained ten causes of action, alleging that the Act (1) violated the dormant Commerce Clause, (2) violated the Privileges and Immunities Clause, (3) was expressly preempted by the Federal Meat Inspection Act (the FMIA), (4) was impliedly preempted by the FMIA, (5) was preempted by the Packers and Stockyards Act, (6) violated the Full Faith and Credit Clause, (7) violated the Due Process Clause, (8) violated the Import-Export Clause, (9) should be declared unconstitutional under a claim for declaratory relief. A tenth cause of action sought judicial review of the Regulations for violating the U.S. Constitution and unlawfully delegating authority to the Commissioner of Agriculture. ECF No. 17. Triumph and Farmer Plaintiffs also sought a preliminary injunction to stay enforcement of the Act. ECF Nos. 26–27.

On September 6, 2023, the district court did not rule on the motion for preliminary injunction or hear Plaintiffs, but rather, collapsed the motion for a preliminary injunction with a trial on the merits under Federal Rule of Civil Procedure 65(a)(2). ECF No. 42. Defendants then filed a motion to dismiss the lawsuit, ECF Nos. 53–54, and the trial court—without written order or any analysis—summarily granted dismissal of nine of the ten counts from the bench. ECF No. 66. Triumph

and Farmer Plaintiffs then moved for partial summary judgment on one portion of the only remaining claim under the dormant Commerce Clause, concerning the Act's discrimination against out-of-state commerce and economic protectionism of in-state commerce, while preserving its dormant Commerce Clause claim alleged pursuant to *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). ECF Nos. 86–87. Defendants did not move for cross summary judgment. ECF No. 103 at 7. After considering Plaintiff's motion, the district court—again without a written order or reasoning—granted summary judgment in favor of Defendants *sua sponte* without any notice that cross summary judgment was being considered, with respect to the Farmer Plaintiffs. *See* ECF No. 99. With respect to Triumph, the trial court suggested the parties agree to hear its discrimination-based claim on a "case-stated" basis and dismissed Triumph's separate dormant Commerce Clause claim supported by *Pike v. Bruce Church* balancing *sua sponte*. ECF No. 99. The Plaintiffs filed an objection on December 1, 2023, to the Court's *sua sponte* summary judgment ruling and lack of the notice provided pursuant to Fed. R. Civ. P. 56(f).

Triumph's discrimination-based claim was focused on the sales

7

exception under Mass. Gen. Laws Ann. ch. 129 App., § 1-5, which allowed in-state sales of whole pork meat to occur on the premises of facilities inspected under the FMIA but did not provide the same treatment for out-of-state FMIA inspected facilities. The Court referred to this as the "slaughterhouse exception" in its later order.

Following a case-stated hearing, on February 5, 2024, the trial court ruled that the slaughterhouse exception violated the dormant Commerce Clause since it allowed only in-state slaughterhouses to sell non-compliant pork meat. ECF No. 125. The district court then severed that provision from the rest of the Act. *Id.* In light of the fact that the sales ban then applied to ***all*** FMIA-inspected facilities, the trial court reversed its own prior decision to dismiss Appellants' preemption claim under the FMIA, and ordered Plaintiffs to move for summary judgment on the claim within thirty days. ECF No. 125. After Triumph moved for summary judgment, and after Defendants had cross-moved for summary judgment, the district court denied Triumph's motion and granted Defendants' motion, finding that the Act with the slaughterhouse exception now severed was not preempted by the FMIA, and accordingly entered judgment in favor of Defendants on July 22, 2024. ECF No. 171–

172.

That judgment therefore also resolved Appellants' original motion for preliminary injunction, 353 days after Appellants moved for preliminary injunction, and 323 days after the district court consolidated the preliminary injunction with a proceeding on the merits.

This appeal follows.

## ARGUMENT

The Court should expedite processing of this appeal, although only a modest acceleration is necessary. Timely resolution will help avoid (or at the very least significantly limit) irreparable injury that the Act poses to Triumph, Farmer Plaintiffs, similarly situated business interests, and the public. Indeed, the Act being challenged—in its current state—leaves the entire pork supply chain in a state of emergent uncertainty and inflicts irreparable harm on not only producers, processors, retailers, and pork consumers nationwide, but also to the wellbeing of the breeding pigs currently being raised.

But this injury goes beyond just economic interests. Indeed, the Act's regulation of farming practices in other states represents yet another regressive step back toward the trade wars the dormant

9

Commerce Clause prevents.

### I. The Irreparable Injuries and Public Interests at Stake Warrant Expedited Treatment.

First, the type of harm the Act poses to Plaintiffs (which largely went uncontested) is irreparable, immediate, and of significant nature.[4] This alone is good cause to expedite this appeal. As the record reflects, the Act has caused significant economic harm that will continue to be inflicted on Triumph and Farmer Plaintiffs. Indeed, it is uncontested that most of the Farmer Plaintiffs' operations do not—and cannot—comply with the Act. *See, e.g.*, ECF No. 26 ¶ 6. Further, the costs to convert are substantial or nearly impossible to overcome while the legality of the law remains uncertain. *See, e.g.*, New Fashion Pork LLP Dec. ¶ 21, ECF No. 27-2; Diaz Dec. ¶¶ 14–15, ECF No. 27-3; Howard Dec. ¶¶ 23–32, ECF No.

---

[4] Indeed, due to the harms the Act posed to Plaintiffs, they sought preliminary injunctive relief by filing a motion for preliminary injunctive relief on August 7, 2023. ECF Nos. 26–27. Although the district court converted the motion into a trial on the merits, the fact that it took nearly ten months for the district court to eventually reach a conclusion on the matter is yet another reason this appeal warrants expedited treatment. *See, e.g.*, 28 U.S. Code § 1657 ("[T]he court shall expedite . . . any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown. For purposes of this subsection, 'good cause' is shown if a right under the Constitution of the United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit.").

10

27-4; Brinker Dec. ¶¶ 16–23, ECF No. 27-5; Eichelberger Dec. ¶¶ 19–28, ECF No. 27-6. And because there is not enough compliant pork, Triumph will have insufficient amounts of pork to process for sale into Massachusetts. *See* ECF No. 27-1 ¶¶ 13–14, 20–23. This will catastrophically impact Triumph, Farmer Plaintiffs, and their contractual relationships with suppliers and purchasers on a national scale. *See id.* And for the pork that *is* compliant, it is uncontested that Triumph had to implement significant new sorting and sales procedures for its processing line *because of* the Act. Partial Stipulation of Facts ¶ 7, ECF No. 107-1. These business harms are the types of harm that can only be categorized as irreparable. *See, e.g., Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009) (holding that the "inability to supply a full line of products may irreparably harm a merchant by shifting purchasers to other suppliers.")

But economic harm is not the only type of harm that will be suffered because of the Act. As shown on the record below, there will necessarily be pork shortages in Massachusetts with attendant effect on the Commonwealth's agencies, businesses, and communities. *See, e.g.*, ECF No. 26 ¶ 6; ECF No. 27-8 ¶ 6; *see also* ECF No. 17 ¶¶ 97–135. And this

impact will spill over with attendant nationwide harm on the broader pork industry. *See, e.g.*, ECF No. 17 at ¶¶ 61–96; *see also Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 405–06 (2023) (Kavanaugh, J., concurring in part and dissenting in part) (reasoning that California's Proposition 12, which imposes similar restrictions as the Act, would "cost American farmers and pork producers hundreds of millions (if not billions) of dollars" and that those costs "will be passed on, in many cases, to American consumers of pork via higher pork prices nationwide" and may also "result in lower wages and reduced benefits (or layoffs) for the American workers who work on pig farms and in meatpacking plants."). And this has already begun because of California's Proposition 12, with increases in the price of pork and a substantial reduction in the volume of pork sold in California. Substantial pricing increases and shortages are imminent for the Commonwealth. *See, e.g.*, Lusk Dec. 5-19, ECF No. 27-8.

## II. The Harm to the Nation's Constitutional Balance Posed by the District Court's Rulings Also Warrants Expedited Review.

Apart from the economic and market impacts of the Act, there is also a structural problem lurking behind the Act that warrants expedited

12

consideration of this appeal. By and large, the Nation's pork supply comes from a handful of mostly Midwestern states. *See, e.g.*, ECF No. 17 ¶¶ 12–21, 64. Of the 356.8 million pounds of retail pork consumed in Massachusetts in 2022, in-state producers only contributed *1.9 million pounds*. ECF No. 17 ¶ 65. In other words, the Act, by specifically imposing production requirements on a food staple that is essentially not produced within the Commonwealth, has uniquely and exclusively targeted out-of-state farmers. *See, e.g.*, ECF No. 17 ¶ 1.

This outright, targeted discrimination against out-of-state commerce is offensive to the principles upon which this Nation was founded, principles which the U.S. Supreme Court has recently reiterated. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) ("Th[e] antidiscrimination principle lies at the 'very core' of [the Court's] dormant Commerce Clause jurisprudence." (citation omitted)). The need to prevent such interstate discrimination was a "central concern of the Framers [and] was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under

the Articles of Confederation." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2461 (2019) (quotation omitted).

As a result, the Nation was born from the proposition that "every farmer and every craftsman shall be encouraged to produce by the certainty that he will have free access to every market in the Nation, that no home embargoes will withhold his export[s], and no foreign state will by customs duties or regulations exclude them." *H. P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 539 (1949). Indeed, the Supreme Court has long recognized that the "entire Constitution is 'framed upon the theory that the peoples of the several states . . . are in union and not division,'" and that the Commerce Clause in particular reflects "special concern both with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 335–36 & n.12 (1989) (quoting *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 523 (1935)).

Following this guidance, the First Circuit itself has invalidated state laws that overstep and violate this principle. *See, e.g.*, *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 45-46, 69-70 (1st Cir. 1999), *aff'd*

*on other grounds sub nom. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) (invalidating a Massachusetts law excluding companies doing business in Burma from state government contracts).

But the district court's rulings below, if allowed to stand, explicitly condone this type of interstate trade warfare. Under its interpretation, one state may dictate to another how to conduct its business solely based upon a particular policy preference that may be unique to that state. If this is the constitutional rule, nothing prevents a patchwork of inconsistent state regulatory obligations, thereby enabling tit-for-tat state regulatory conflict. Indeed, it would be simple for a state with an industry specifically targeted by another state's laws to respond in kind, perhaps by prohibiting the sale of goods produced by workers paid less than $20 per hour, or by prohibiting the retail sale of goods from producers that do not pay for certain types of employees' benefits, or by prohibiting the sale of goods produced without that state's interpretations of what are sustainable practices. Whatever the issue, this threatens to impede interstate commerce and aggravate divisions among States, and it encourages voters to prosecute their political

disagreements via retaliatory extraterritorial regulation, rather than via their representatives in Congress.

## CONCLUSION

In short, the enforcement of the Act will inflict serious harms, both economic and to the Nation's constitutional balance. Due to the significant and immediate nature of these harms, this Court should hear these issues in an expedited manner. Consequently, Appellants respectfully suggest the following modestly expedited schedule:

- **Appellants' opening brief: September 20, 2024 (28 days from today)**

- **Appellees' response brief: October 18, 2024 (28 days following Appellants' opening brief)**

- **Appellants' reply brief: October 28, 2024 (10 days following Appellees' response brief).**

Further, Appellants respectfully request that the Court set this matter for argument during its November calendar, or as shortly thereafter as the Court deems appropriate.

Dated: August 23, 2024

Respectfully submitted,

*/s/ Michael T. Raupp*
MICHAEL T. RAUPP
CYNTHIA L. CORDES
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
michael.raupp@huschblackwell.com
cynthia.cordes@huschblackwell.com

RYANN A. GLENN
HUSCH BLACKWELL LLP
14606 Branch Street, Suite 200
Omaha, NE 68154
Telephone: (402) 964-5000
Facsimile: (402) 964-5050
ryann.glenn@huschblackwell.com

*Attorneys for Plaintiffs-Appellants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 27(d) and 32(g), the undersigned hereby certifies that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 27(d)(2) and any accompanying documents as authorized by Fed. R. App. P. 27(a)(2)(B), the motion contains 3,010 words.

The motion has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font as provided by Fed. R. App. P. 32(a)(5)-(6). As authorized by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of the word processing system in preparing this certificate.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this Friday, August 23, 2024 the foregoing document was electronically filed with Clerk of the Court using the CM/ECF system which sent electronic notification of such filing to all CM/ECF Participants.

<em><u>/s/Michael T. Raupp</u></em>